CATHERINE CONNELLY v. JAMES A. FISHER, Trustee, and
S. B. SPURLOCK.

April Term, 1877.

RELIEF WHERE THE PARTIES ARE NOT ON EQUAL TERMS. — Where one of
two parties to a transaction is, from ignorance, incapacity, or other cir-
cumstances, such as absence of professional or impartial advice, not on
equal terms with the other party, the burden is upon the latter to show that
the former entered into it voluntarily, with full knowledge of the nature
and effect of what was being done.' So held where an illiterate old
woman was induced, under peculiar circumstances, by the defendants, in-
telligent business men, to execute two mortgages on her homestead, drawn
up by the clerk of the defendants, according to a form furnished by a
lawyer, by which the property was authorized to be sold free from the
homestead right and the equity of redemption.

*M. T. Bryan*, for complainant.
*S. W. Childress*, for defendants.

THE CHANCELLOR : — The complainant is a widow woman
with three children, two of them now of age, and the other
a girl under twenty-one who lives with her. She was the
owner of a lot in Edgefield, on which she resided in a home-
stead exempt by law from legal process. She also carried
on in the house a small family-grocery business, some of
the stock for which she bought from time to time from the
defendant Spurlock, then the senior member of the firm of
S. B. Spurlock & Co. This firm sued the complainant, be-
fore a justice of the peace, on a balance of account, and
recovered judgment for $127.90. On October 5, 1874, an
execution issued on this judgment, and was placed in the
hands of a constable, who levied it on her stock of grocer-
ies, and realized on the debt, after deducting costs, $48.60.
Afterwards, on November 17, 1875, the defendant Spur-
lock sold the complainant a bill of groceries amounting to
$155, payable on July 1, 1876, with interest at the rate of
ten per cent, upon her executing to the defendant Fisher
a trust-deed on her house and lot to secure the debt, with

power of sale, free from the equity of redemption, if the debt was not promptly paid at maturity. As soon as this sale was effected, an *alias* execution was issued on the justice's judgment, and levied upon the goods thus bought by the complainant, and the goods were sold thereunder for $92.45, which about paid the balance of the judgment and costs. The complainant seems to have called upon the defendant for an explanation, and was induced to purchase another bill of groceries amounting to $130, the payment of which, with interest at the rate of ten per cent per annum, was secured by a similar deed of trust in all respects, made on November 23, 1875. Both of these deeds were drawn up by the trustee, Fisher, who was a clerk in the employment of the defendant Spurlock, from a form procured by him for Spurlock, from a lawyer, expressly for the purpose. Both deeds were executed by the complainant by making her mark. They were read over to her by Fisher, who admits, however, that he does not remember telling her about the equity of redemption, and that she was releasing it. Nothing was said of the homestead-right of the complainant, or of the effect of the deeds on that right. The defendant Spurlock acted under legal advice and assistance, while the complainant had not the advantage of either; nor does she seem to have been advised to consult, or to have consulted, her friends, or impartial third persons. She seems also to have thought, whether superinduced by the defendants or not, that the second deed was in lieu of the first, and intended to make up to her for the loss occasioned by the forced sale under execution of the first purchases. The present bill was filed to enjoin the sale of the property under the trust-deeds, and for such further relief as she may be entitled to.

The general theory of the law, in regard to acts done and contracts made by parties, being that, in order to bind them, there must be a free and full consent, and consent being an act of reason accompanied with deliberation, trans-

actions in which one ot the parties is not as free and voluntary an agent as the other, or does not apprehend the meaning and effect of what he is doing, want the very qualities which are essential to the validity of all transactions. It is upon this principle that when a person, who from his state of mind, age, weakness, or other peculiar circumstances is incapable of exercising a free discretion, is induced by another to do any act which may tend to his injury, that other shall not be allowed to derive any benefit from his improper conduct. The equitable rule is of universal application, that where a person is not equal to protecting himself in the particular case, the court will protect him. Kerr on Fraud, 143; Story's Eq. Jur., sec. 222. The fact that a transaction may have been improvident or precipitate, or may have been entered into without independent professional advice, is as immaterial as mere inadequacy of consideration to vitiate the act, if the parties were on equal terms, and in a situation to act and judge for themselves, fully understood the transaction, and no evidence can be adduced of the exercise of undue influence or oppression. But the absence of professional advice becomes a most material circumstance where one of the parties to a transaction is, from ignorance, incapacity, from humble position, or other circumstances, unable to protect him or herself. *Kempson* v. *Ashbee*, L. R. 10 Ch. App. 19; *Baker* v. *Bradley*, 7 De G. M. & G. 621. In all such cases, whatever be the nature of the transaction, the *onus* of proof rests on the party who seeks to uphold it, to show that the other performed the act or entered into the transaction voluntarily and deliberately, knowing its nature and effect. Kerr on Fraud, 190, and cases cited. It is incumbent upon the person who claims under an instrument executed by an illiterate person to show that the grantor understood the nature of the instrument; and it has been held that the evidence is not sufficient which merely shows that it was read over to the grantor by an unprofessional person, who had

prepared it, and as to whose capacity to explain it there was no proof, except such as rendered the capacity very doubtful. *Price* v. *Price*, 1 De G. M. & G. 308. A contract made with full legal advice on the one side and none on the other will rarely stand the test of judicial scrutiny. *Clarkson* v. *Hanway*, 2 P. W. 205 ; *Murray* v. *Palmer*, 2 Sch. & Lef. 474.

The transactions before us are amenable to all of these objections. On the one side was an intelligent wholesale grocer, acting under legal advice, and doing every thing himself or by his confidential clerks. On the other side was an illiterate old woman, without legal advice, without the aid of friends or impartial persons, whose only positive act seems to have been the making of her mark to deeds which deprived her of the homestead given to her by law, and subjected her little all to be sold on short notice for cash, free from any right to redeem. The Constitution of the state is careful to preserve to every head of the family a homestead to the amount of $1,000, exempt from the liability for debt. It is the duty of the courts to see that this important provision of the organic law is carefully guarded, and that the policy of the law is not thwarted by hasty transactions with ignorant persons. Without imputing to the defendants in this case any improper motive, and even conceding that the only object had in view by them was to sell goods upon sufficient security, the illiterate character of the complainant, evidenced by the making of her mark to the deeds in controversy, to say nothing of her sex, required them to throw upon her the active duty of having the deeds drawn, by an impartial person of her own selection, and puts upon them now the burden of showing, to the entire satisfaction of the court, that she entered into the transactions voluntarily and deliberately, knowing their nature and effect. The evidence is not satisfactory that the complainant was fully advised of the effect of the waiver of the equity of redemption, and there is nothing to show that

her attention was called to her homestead-rights, or that she intended to part with them.

Strictly speaking, the result of these views would be to avoid the deeds altogether. But the bill only contemplates relief to the extent of the equity of redemption and the homestead-right. The injunction will, therefore, be made perpetual, with costs, without prejudice to the rights of the defendant Spurlock to enforce the deeds as mortgages, subject to the equity of redemption and the homestead-right.